593 A.2d 357

STATE OF NEW JERSEY, PLAINTIFF, v. CARLOS SANTIAGO, DEFENDANT-APPELLANT.

IN RE KINGA BORONDY [1].

Superior Court of New Jersey
Appellate Division

Argued April 30, 1991—Decided July 19, 1991.

---

[1]The caption of A–1673–90T3F reads In Re Kinga Borondy, pursuant to *R.* 1:10–1, as Ms. Borondy is appealing from the contempt citation against her in *State v. Carlos Santiago.*

Before Judges ANTELL, SCALERA and KEEFE.

*John J. Convery,* Assistant Deputy Public Defender, argued the cause for the appellant, Santiago, in A–1629–90T3F and respondent, Santiago, in A–1673–90T3F, (*Wilfredo Caraballo,* Public Defender of New Jersey, attorney).

*Steven L. Lapidus* argued the cause for the respondent, Kitts, in A–1629–90T3F and appellant, Borondy, in A–1673–

90T3F, (*Robinson, St. John & Wayne,* attorneys; *Edward F. Lamb, Steven L. Lapidus* and *Donna M. duBeth,* on the brief).

The opinion of the court was delivered by

KEEFE, J.A.D.

The issues presented on appeal are: 1) once a newsperson invokes the privilege afforded by the Shield Law, *N.J.S.A.* 2A:84A-21 *et seq.,* who has the burden of proving the eyewitness exception to the privilege provided in *N.J.S.A.* 2A:84A-21a(h) of the law, and 2) can a newsperson's testimony be compelled in order to supply the threshold evidence necessary to overcome the exception?

On October 11, 1989, defendant Carlos Santiago was indicted for events which occurred on October 29, 1988 in Newark. The indictment charged Santiago with eight counts of second degree aggravated assault; third degree possession of a prohibited device, a bullet proof vest; third degree unlawful possession of a handgun without a permit; second degree unlawful possession of a handgun with a purpose to use it unlawfully against the person of another; and fourth degree possession of Dum Dum bullets. Approximately one year later on the eve of trial, Santiago caused subpoenas to be served upon Kinga Borondy, a reporter for the Star–Ledger who wrote two articles pertaining to the events of October 11th, and Tom Kitts, a staff photographer employed by New Jersey News Photos, who took photographs at the scene and provided them to the Star–Ledger.

Borondy and Kitts moved to quash the subpoena *ad testificandum.* In support of their application, they filed certifications setting forth the nature of their employment and asserted that any information received concerning defendant or the crimes in which he was allegedly involved was obtained solely during the course of their professional duties. The trial judge, apparently finding that Borondy and Kitts had properly invoked their privilege under the Shield Law, entered an order quashing

the subpoenas.[2]   Santiago made an emergent application for leave to appeal.   We granted the motion and summarily reversed the orders quashing the subpoenas because the record was insufficient for us to address the issues raised by the parties in their emergent application.   The matter was remanded "to the Law Division for a plenary hearing, findings and conclusions with respect to the witness's privilege under *N.J.S.A.* 2A:84A–21 and particularly with respect to whether the circumstances of the case fall within the eyewitness exception contained in *N.J.S.A.* 2A:84A–21a."

A plenary hearing was promptly held by the trial judge.   At the hearing, defendant contended that newspaper articles and accompanying photographs concerning the event resulting in his indictment were sufficient evidence, standing alone, to prove that Borondy and Kitts were eyewitnesses within the intent of the Shield Law.[3]   For that reason, defendant maintained that he should be permitted to call Borondy and Kitts to the witness stand and question them for the purpose of determining whether both, or either one of them, possessed knowledge relevant to Santiago's defense.   Defense counsel admitted that he did not know what either Borondy or Kitts actually saw.

The trial judge denied defendant's request to call Kitts to the witness stand.   However, above the objection of Borondy, the judge permitted defendant to call her as a witness.   Borondy was sworn and during the course of her testimony asserted the Shield Law privilege.   The trial judge held Borondy in "technical contempt" for refusing to answer defense counsel's questions but stayed the order pending appeal.   He entered an order quashing the subpoena served on Kitts.   Borondy filed a mo-

---

[2]We were not provided a copy of the transcript of those proceedings either on the emergent application for leave to appeal or in the course of the plenary appeal.

[3]The record does not reflect that either the articles or the photographs published in the newspaper were submitted to the trial judge for his review.

tion for leave to appeal from the order holding her in technical contempt, and defendant filed a motion for leave to appeal from the order quashing the subpoena served on Kitts. We granted both motions and ordered the appeals to be heard on the same calendar. For the reasons stated herein, we reverse the order finding Borondy in technical contempt and affirm the order quashing the subpoena served on Kitts.

Generally speaking, any person employed by the news media for the purpose of gathering, transmitting or disseminating news has a privilege to refuse to disclose "[a]ny news or information obtained in the course of pursuing his professional activities whether or not it is disseminated." *N.J.S.A.* 2A:84A–21b. News includes both written and pictorial information. *N.J.S.A.* 2A:84A–21a(b).

*N.J.S.A.* 2A:84A–21.3 requires that a newsperson invoking the privilege make a *"prima facie* showing" that the newsperson is: 1) "engaged in, connected with, or employed by a news media for the purpose of gathering, procuring, transmitting, compiling, editing or disseminating news for the general public or on whose behalf news is so gathered, procured, transmitted, compiled, edited or disseminated," and 2) "that the subpenaed materials were obtained in the course of pursuing his professional activities." *N.J.S.A.* 2A:84A–21.3a. Defendant does not claim that Borondy and Kitts failed to make the required *prima facie* showing. Rather, defendant maintains that he has overcome the claim of privilege by showing that Borondy and Kitts fall within an exception to the privilege.

The Shield Law provides that the phrase, "in the course of pursuing his professional activities," as found in *N.J.S.A.* 2A:84A–21b, "does not include any situation in which a reporter is an eyewitness to, or participant in, any act involving physical violence or property damage." *N.J.S.A.* 2A:84A–21a(h). Defendant contends that the crimes for which he was indicted, and the facts which undergird the State's case against him, consti-

tute an "act involving physical violence" as contemplated by the statute.[4]

Borondy and Kitts assert that we need go no further in the interpretation of the Shield Law than to determine the meaning of "physical violence" as contained in *N.J.S.A.* 2A:84A–21a(h). Relying on *In re Vrazo Subpoena,* 176 *N.J.Super.* 455, 423 *A.*2d 695 (Law Div.1980), they contend that physical violence connotes personal injury "resulting from the exertion of force." *Id.* at 464, 423 *A.*2d 695. They argue that, because no one was injured in the incident since defendant shot and missed, defendant is precluded from claiming the events allegedly witnessed by the newspersons constituted physical violence. We disagree. In its most recent opinion on this subject, the Supreme Court, in discussing the meaning of the term "act" within the phrase "any act involving physical violence or property damage," contained in *N.J.S.A.* 2A:84A–21a(h), held that "act" means physical action and not its consequences. The Court said:

> Many legal sources link the definition of "act" to human volition. For example, the *Restatement (Second) of Torts* § 2 (1965) defines "act" as "an external manifestation of the actor's will and *does not include any of its results, even the most direct, immediate and intended.*" (emphasis supplied). The *Restatement* illustrates that distinction by explaining that when an actor points a pistol at another and pulls the trigger, "the act is the pulling of the trigger and not the impingement of the bullet upon the other's person." *Id.* at comment c. *Prosser and Keeton on the Law of Torts* states that "an 'act,' as that term is ordinarily used, is a voluntary contraction of the muscles, and nothing more. An act is to be distinguished from its consequences." W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on the Law of Torts,* § 8, 34 (5th ed. 1984).

*Matter of Woodhaven Lumber & Mill Work, State of New Jersey v. Asbury Park Press,* 123 *N.J.* 481, 487, 589 *A.*2d 135

---

[4]The police reports, which contain the factual basis for the indictment, were not a matter of record before the trial court. However, they have been included in the appendices submitted on appeal without objection. Succinctly stated, the police reports reveal that defendant barricaded himself in an apartment with a weapon. When approached by the police defendant shot at several officers but missed hitting any of them.

(1991). Thus, we conclude that the trial judge was correct in holding there was an act of physical violence involved in the instant case and now address the issues stated at the beginning of this opinion.

■■■ The Legislature has provided that a "party seeking enforcement of the subpena" must show "by a preponderance of the evidence": 1) "that the subpenaed materials are relevant, material and necessary to the defense," 2) "that they could not be secured from any less intrusive source," 3) "that the value of the material sought as it bears upon the issues of guilt or innocence outweighs the privilege against disclosure," and 4) "that the request is not overbroad, oppressive, or unreasonably burdensome...."[5] *N.J.S.A.* 2A:84A–21.3b. This procedure reflects the legislative effort to balance a defendant's Sixth Amendment right with the newsperson's privilege against disclosure. Assembly Judiciary, Law, Public Safety and Defense Committee Statement, Assembly, No. 3062, *L.* 1979, *c.* 479. The New Jersey Supreme Court has recognized that the statutory procedure reflected in the amendments to the Shield Law, *N.J.S.A.* 2A:84A–21.1 to –21.8, codify the guidelines previously established by the Court in *In re Myron Farber,* 78 *N.J.* 259, 394 *A.*2d 330 (1978), *cert. denied sub nom., New York Times v. New Jersey,* 439 *U.S.* 997, 99 *S.Ct.* 598, 58 *L.Ed.*2d 670 (1978), to protect the interest of defendants and newspersons. *State v. Boiardo,* 82 *N.J.* 446, 449, 414 *A.*2d 14 (1980) (*Boiardo* I).

Our review of the record satisfies us that Santiago has completely failed to sustain his burden of proof under *N.J.S.A.* 2A:84A–21.3b. In *Farber* and *Boiardo, supra,* defendants made requests for specific materials, the identification of which revealed the relevancy of the evidence to the defense asserted in each case. Here, defendant has made no such specific request or even demonstrated satisfactorily that the reporter or

---

[5]The proponent of the subpoena may also overcome the *prima facie* proof of a newsperson's privilege by proving waiver through clear and convincing evidence. However, waiver has not been asserted in this case.

photographer witnessed acts of physical violence. Defense counsel admits in his brief that he subpoenaed Borondy and Kitts because he "believed that they may be in a position to offer some exculpatory testimony," without indicating the nature of the testimony expected to be given. In *Farber*, the Court stated:

> We wish to make it clear, however, that this opinion is not to be taken as a license for a fishing expedition in every criminal case where there has been investigative reporting, nor as permission for an indiscriminate rummaging through newspaper files.

*Farber, supra*, 78 *N.J.* at 277, 394 *A.*2d 330. It is clear that defendant's tactics in the instant case amount to nothing more than a "fishing expedition."

The very thought that a newsperson's testimony could be compelled in order to ascertain whether the newsperson actually witnessed the acts involving physical violence and whether the events actually witnessed are relevant, material and necessary to the defense "would make the notion of a newsperson's privilege nothing more than an empty promise— the reasoning behind such rule would require the production of everything." *Boiardo I, supra*, 82 *N.J.* at 461, 414 *A.*2d 14.

Moreover, defendant has failed to carry his burden of proving that the newspersons' knowledge is more relevant than information obtainable from less intrusive sources. Defendant argues that sources of information other than the numerous police officers on the scene are necessary to counterbalance anticipated police testimony, yet he fails to inform us how he anticipates such testimony will counter the testimony anticipated to be given by the police witnesses. Furthermore, the event itself and the newspaper account of the event reflects that there were other non-police observers at the scene. Defendant, however, has made no effort to canvass the neighborhood to determine whether there are any witnesses with relevant knowledge. As we see it, subpoenaing a newsperson for the purpose of ascertaining what the newsperson saw at the scene of the crime, without any independent evidence to support an

inference that the newsperson witnessed something material or necessary to the defense and that such knowledge is superior to that of anyone else, has the same "chilling effect on the free flow of information as any other" form of compulsion of a newsperson's information. *Boiardo* I, *supra*, 82 *N.J.* at 469, 414 *A.*2d 14. We reiterate what the Supreme Court said in *Boiardo* II: "[t]he right to compulsory process has never been held to require production of an item of evidence upon a defendant's mere unsubstantiated assertion that it would assist in his defense regardless of its availability through other sources." *State v. Boiardo*, 83 *N.J.* 350, 353, 416 *A.*2d 793 (1980).

The order of the trial court holding Borondy in technical contempt is reversed. The order quashing the subpoena served on Tom Kitts is affirmed.